Mr. Chief Justice Shahkey
delivered the opinioh of the court. Black instituted this suit on a promissory note, alleging an indorsement to his intestate, and the defendant, Davis, pleaded non assumpsit. In support of the issue the plaintiff read the declaration, and offered in evidence his own affidavit, made before a justice of the peace, in which he describes the note particularly, and avers that it has been lost, to the admission of which the defendant objected, as incompetent to support the issue, but the court permitted it to be read. This objection would have been well taken, if there had been no other evidence to support the issue; but it was proper evidence to be addressed to the court, to lay the foundation for proof of the contents. ■ If a paper, which it is necessary to use in evidence, has been lost, the party to the suit, if he were the holder of such paper, is generally a competent witness to testify to the loss alone. This rule of course has its exceptions, or at least there are cases in which the party will not be permitted to give parol evidence of the contents, notwithstanding the loss. If, for instance, he destroyed it himself, with a view to let in parol evidence. And as a party to the suit can testify only to the single fact of loss, his affidavit of that fact has often been received. 3 Phil. Ev. (Cow. & Hill’s notes) 1217, 1218, 1219. Taylor v. Riggs, 1 Peters, 591. The evidence of loss is addressed to the court, in order to show the reason for allowing secondary evidence to go to the jury. A party cannot prove the contents of a lost instrument by his own oath, and yet it is difficult to imagine how the loss of an instrument could be established, unless the party was permitted to give some description of it. That portion of the affidavit, which describes the amount of the note, was not proper evidence for the jury, nor indeed was any part of the affidavit. But Garrett, a witness for the plaintiff, testified that he transferred the note declared on to Sadler & Black, either by delivery or by blank indorsement. Now although he says nothing of the amount of the note, or the time of payment, in so many words, yet he does so in effect, by speaking of the note declared on, thus describing it by reference to the declaration, and by that means fixing the amount and date, and time of maturity. A *232 note differing in any material particular, would not have been the note declared on. Another witness testified, that after the note declared on became due, he had a conversation with the defendant about it, in which he promised to pay it. This testimony must be regarded as fully establishing the contents of the note. Under this state of proof should the judgment be reversed, because the affidavit was improperly admitted? In the case of Barringer v. Nesbit, 1 S. & M. 22, improper evidence was permitted to go to the jury on the part of the defendant, who obtained a verdict. On error brought by the plaintiff, we held that although improper testimony had been permitted to go to the jury, we would not for that reason reverse the judgment, if there was also sufficient legal testimony to justify the verdict. In that case, as in this, there was exception taken to the evidence when it was admitted. We held, however, that this rule would not apply in doubtful cases; but in this case there can be no doubt, but what the contents of the note were satisfactorily shown, without the affidavit, and the authority is therefore decisive.
The only remaining point which is fairly presented is an objection taken to the instruction of the court, given at the instance of the plaintiff, which was, that if Davis, after the loss of the note, had promised to pay the plaintiff, then they should find for the plaintiff. To understand the object of this charge, it is proper to observe that one of the witnesses had testified that he had indorsed the note to Sadler & Black. The use sought to be made of this testimony was to defeat the action, by showing the property in the note to be in Sadler & Black, instead of Black alone, who was the plaintiff’s intestate. And accordingly the defendant had previously asked the court to instruct the jury, that if the note was assigned to Sadler & Black, and that T. M. Black had no assignment of it, they should find for the defendant, which instruction the court gave. To establish ownership, then, must have been the object in resorting to this promise; it could have been useful for no other purpose. Considered in this light, the charge of the court seems to have been correct. Amongst the many purposes for which a *233 subsequent promise is resorted to, one is that it dispenses with proof of title, and relieves the plaintiff from proving the several indorsements. Bourangent v. Anderson, 6 Esp. Rep. 43, cited in Tibbetts v. Dowd, 23 Wend. 379. This promise was, of course, but prima fade evidence of ownership, and might have been rebutted, but there was no rebutting evidence. The in-dorsement of Garrett to Sadler & Black was made in blank, prior to the promise, and that indorsement was not inconsistent with Black’s title. Sadler may have transferred his interest without indorsement, in which case it was proper (or any subsequent holder to declare as the immediate assignee of Garretfi To counteract the charge which had been given for the defendant, this charge was properly asked, and we cannot say that there was error in giving it. It is said that this promise was conditional, and therefore amounted to nothing. The witness was the plaintiff’s attorney, and said that the defendant promised to pay on the first conversation. He subsequently required an indemnifying bond, which was prepared, but the defendant then informed him, that he would neither take the bond nor pay the debt.
The judgment must be affirmed.